O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JIMMY WOOD,<br>　　　　　Plaintiff,<br>　　v.<br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br>　　　　　Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. EDCV 11-01799-OP<br><br>MEMORANDUM OPINION AND ORDER |

The Court[1] now rules as follows with respect to the two disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (ECF Nos. 5, 7.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 4 at 3.)

1

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly considered Plaintiff's credibility; and

(2) Whether the ALJ properly considered the testimony of Plaintiff's wife.

(JS at 3.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /
/ / /
/ / /

# III.

# DISCUSSION

## A. The ALJ's Findings.

The ALJ found that Plaintiff has the following severe impairments: morbid obesity, sleep apnea, diabetes mellitus, affective mood disorder, obsessive compulsive disorder, and edema. (Administrative Record ("AR") at 15.) The ALJ concluded that Plaintiff retains the residual functional capacity ("RFC") to perform medium work with the following limitations: lift and/or carry twenty-five pounds frequently and fifty pounds occasionally; stand and/or walk for four hours in an eight-hour workday; sit for six hours in an eight-hour workday; must be close to a bathroom; and can do simple and repetitive tasks but cannot have contact with the public and can only have non-intense contact with co-workers and supervisors. (Id. at 16.)

To determine the extent to which Plaintiff's limitations eroded his ability to perform the full range of medium work, the ALJ asked the vocational expert ("VE") whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (Id. at 21.) Based on the testimony of the VE, the ALJ determined Plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy. (Id.) Thus, the ALJ determined that Plaintiff has not been under a disability as defined by the Social Security Act. (Id.)

## B. The ALJ Properly Evaluated Plaintiff's Credibility.

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for rejecting his excess pain testimony. (JS at 26.) The Court disagrees.

In her decision, the ALJ rejected Plaintiff's credibility as follows:

> The claimant's testimony does not establish any different conclusions than found herein. The claimant testified he was not

currently working and last worked in October 27, 2008 as a caregiver for his mother; the job ended when she passed away. The claimant has no other sources of income besides relying on support from his spouse. The claimant lives in a two-story house with his spouse and a dog. He said he does not go upstairs. The claimant has applied for two housekeeping jobs at hospitals, but was denied.

The claimant said he does not believe he could do the job if he was offered the job. The claimant explained he has slept for 3 weeks prior to the hearing, he has slept for 2 weeks straight and only got out of bed to go to the bathroom. The claimant said he could not work because he has a bipolar disorder, depression, and attention deficit hyperactivity disorder ("ADHD").

The claimant uses a CPPAP [sic] machine to alleviate his sleep apnea for 12 years. The claimant explained he is fatigue [sic] and lays down 4 to 6 hours. He feels constantly exhausted. He stated he has diabetes mellitus and has neuropathic pain in his feet; the claimant takes medication for his diabetes. He is on a diabetic diet and walks a block once a week. He also takes medication for his depression.

The claimant admitted he has a valid California driver's license and is able to drive. He also admitted he drinks alcohol. He explained he binge drinks once a week.[3] He admitted he drank three beers the night before the hearing. The claimant also admitted he could do the following activities of daily living: take his medication as prescribed, go shopping, watch television, walk to the mailbox to

---

[3] At the hearing, Plaintiff explained he binge drank once a week prior to 2008 and about once a month after 2008. (AR at 37.)

get the mail, prepare his own meals, maintain his personal care, help his wife with the household chores, attend church every Sunday, and use a computer.

In addition to the claimant's testimony, the undersigned has also read and considered the claimant's fatigue questionnaire, dated March 22, 2009, and statements of records and finds the claimant only credible to the extent that he can do the work described herein. The claimant stated he could do the following activities of daily living, such as: take care of his dog, make coffee, use a computer to check his emails and current events, prepare his own meals, do household chores (e.g. doing the dishes), run errands (e.g. shopping for groceries, getting gas for the car), walk to the mailbox to pick up mail, do yard work (e.g. mow the lawn), and watch television. Despite is [sic] abilities to do various activities of daily living, the claimant stated he has fatigue.

The undersigned notes some of the physical and mental abilities and social interactions required in order to perform the above-described activities of daily living are the same as those necessary for obtaining and maintaining employment. The claimant's ability to participate in the activities of daily living, stated above, undermined the credibility of the claimant's allegations of functional limitations.

. . . .

The medical records indicate the claimant has been treated at the Beaver Medical Group from October 3, 2008 to February 24, 2010. The claimant has been diagnosed with obstructive sleep apnea, hypertension, hyperlipidemia diabetes, morbid obesity, gout, insomnia, depression, chronic ankle edema, history of 'tumor' right

adrenal gland, and a history of steatohepatitis. A medical report, dated October 29, 2009 notes the claimant has bronchitis (probably influenza), diabetes mellitus, hypertension, sleep apnea, edema, and depression and insomnia, all of which are stable. He has been conservatively treated with medication and advised to go on a diet and lose weight. However, the treatment records show the claimant declined to follow treatment recommendations. The claimant 'did not want to deal with' dieting and weight loss. This demonstrates a possible unwillingness to do what is necessary to improve his condition. It may also be an indication that his symptoms are not as severe as he purports.

. . . .

Regarding to the claimant's mental impairment, the undersigned has read the checklist-style progress notes, dating from June 3, 2009 to July 13, 2010. These checklist-style medical forms appear to have been completed as an accommodation to the claimant and include only conclusions regarding functional limitations without any rationale for those conclusions. The undersigned finds these medical forms have very little probative value because they are not supported by any objective evidence. Further, the recent progress notes show the claimant was complaint [sic] with treatment, had no medication side effects, and had a normal mental status examination.

The undersigned has also read and considered all of the State agency physicians' reports and consultative examiners' reports and agrees with them. However, the undersigned took into consideration the claimant's subjective complaints and gave the claimant a more restrictive residual functional capacity herein than assessed by the State agency physicians reports and consultative examiners.

>    . . . .
>
>    In sum, the above residual functional capacity assessment is supported by the evidence as a whole. The claimant's subjective complaints are less than fully credible and the objective medical evidence does not support the alleged severity of symptoms.

(Id. at 17-20 (internal citations omitted).)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (holding insufficient an implicit finding that claimant was not credible).

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

To determine whether a claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider, among other things, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the

symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284.

    Here, the ALJ provided clear and convincing reasons for finding Plaintiff's subjective complaints of impairment less than credible.

    The ALJ cited Plaintiff's ability to engage in activities of daily living that require the same physical and mental abilities as those necessary to obtain and maintain employment.  (AR at 18.)  The ALJ noted that Plaintiff's ability to perform these activities is inconsistent with an incapacitating or debilitating condition.  (Id.)  Daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting."  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Burch v. Barnhart, 400 F.3d 676, at 681 (9th Cir. 2005) (finding adverse credibility based on daily activities may be proper "if a claimant engaged in numerous daily activities involving skills that could be transferred to the workplace").  In a fatigue questionnaire dated March 22, 2009, Plaintiff stated that on a daily basis he takes care of his dog, makes coffee, uses a computer, prepares his own meals, does household chores, run errands, goes grocery shopping, walks to the mailbox to pick up mail, and watches television.  (AR at 17-18, 162-67.)  Although Plaintiff did complain of getting tired and needing rest, substantial evidence supports the ALJ's conclusion that Plaintiff's ability to engage in such daily activities undermines his credibility as to functional limitations.

    Furthermore, the ALJ noted that the objective medical evidence does not

support Plaintiff's alleged severity of symptoms. (AR at 20.) The ALJ pointed to the internal medicine evaluation conducted by consultative examiner and Board certified internist, Sandra M. Eriks, M.D., who found Plaintiff to be generally normal and capable of heavy work. (AR at 19-20, 252-56.) She further cited the psychiatric evaluation conducted by consultative examiner and Board eligible psychiatrist, Linda M. Smith, M.D., who assessed Plaintiff's ability to interact with the public as only mildly impaired. (AR at 20, 196-202.) Although a lack of objective medical evidence may not be the sole reason for discounting a plaintiff's credibility, it is nonetheless a legitimate and relevant factor to be considered. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Moreover, the ALJ's RFC determination gave Plaintiff the benefit of the doubt and was more restrictive than that found by these consultative examiners.

      Plaintiff argues the ALJ erroneously considered his obesity in rejecting his credibility insofar as she concluded that Plaintiff declined to follow treatment recommendations and that Plaintiff was possibly unwilling to do what is necessary to improve his condition. (JS at 29-31.) The ALJ found that Plaintiff had been advised to go on a diet and lose weight to help with his impairments but failed to follow these treatment recommendations, thus demonstrating a possible unwillingness to do what is necessary to improve his condition and an indication that his symptoms were not as severe as he purported. (AR at 19.) An ALJ may find that a claimant's refusal of a recommended course of treatment supports a finding that he is not credible. See Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007) ("Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated."); 20 CFR § 404.1530(a) and 416.930(a) ("In order to get benefits, you must follow

1  treatment prescribed by your physician if this treatment can restore your ability
2  to work."); 20 CFR 404.1530(b) and 416.930(b) ("If you do not follow the
3  prescribed treatment without a good reason, we will not find you disabled.").
4  However, "failure to follow treatment for obesity tells us little or nothing about
5  a claimant's credibility." Orn, 495 F.3d at 638.  Thus, the ALJ improperly cited
6  Plaintiff's failure to lose weight as a reason for rejecting his credibility.

However, because the ALJ provided other valid reasons for discounting Plaintiff's credibility, any error was harmless.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162, 1163 (9th Cir. 2008) (finding an error by the ALJ with respect to one or more factors in a credibility determination may be harmless if there "remains substantial evidence supporting the ALJ's conclusions" in that regard); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (upholding the ALJ's reasons for discounting claimant's credibility where one reason was invalid but other reasons supported the ALJ's analysis).

Based on the foregoing, the Court finds that relief is not warranted on this claim.

**C.     The ALJ Properly Considered the Testimony of Plaintiff's Wife.**

Plaintiff claims that the ALJ failed to properly consider the testimony of Plaintiff's wife, Stella Wood.  (JS at 3.)  Specifically, Plaintiff notes the ALJ improperly rejected Ms. Wood's testimony on the grounds that (1) Ms. Wood "asserts the [Plaintiff] has minimal limitations"; (2) Ms. Wood's testimony mirrors Plaintiff's function report and allegations; (3) Ms. Wood's assertions are not supported by any objective medical evidence; (4) Ms. Wood has filial and pecuniary motivation to be helpful to Plaintiff; and (5) Ms. Wood "is not knowledgeable in the medical and/or vocational fields and thus is unable to render opinions on how the [Plaintiff's] impairments impact his overall abilities to perform basic work activities".  (Id. at 4-13.)  Again, the Court disagrees.

Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provide that, in addition to medical evidence, the Commissioner "may also use evidence from other sources to show the severity of [an individual's] impairment(s) and how it affects [his] ability to work," and the Ninth Circuit has repeatedly held that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). This applies equally to the sworn hearing testimony of witnesses (see Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), as well as to unsworn statements and letters of friends and relatives. See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000). If the ALJ chooses to reject such evidence from "other sources," he may not do so without comment. Nguyen, 100 F.3d at 1467. The ALJ must provide "reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

Here, the ALJ provided sufficient reasons germane to Plaintiff's wife for rejecting her testimony.

### 1. **Minimal Limitations.**

Plaintiff asserts that the ALJ misstated the evidence when he stated Plaintiff's wife had asserted that Plaintiff's limitations were minimal. (JS at 5.) However, the ALJ noted Plaintiff's wife testimony: Plaintiff's sleep apnea is better when using the CPAP machine; he does not sleep through the night; he seems always sleepy and lethargic; he is irritable, cranky, angry, confused, and overwhelmed; he is unable to complete tasks; and he has poor circulation in his legs. (AR at 18.) Whether or not the ALJ properly described this testimony as asserting "minimal limitations," any error was harmless, as the ALJ still took these issues into account when she limited Plaintiff to medium exertion work, with simple and repetitive tasks, no contact with the public, and only non-intense contact with co-workers and supervisors. (Id. at 19 (stating that

the ALJ "took into consideration the claimant's subjective complaints and gave the claimant a more restrictive residual functional capacity herein than assessed by the State agency physicians['] reports and consultative examiners.").

### 2. Mirrors Plaintiff's Testimony.

The ALJ found that the testimony of Plaintiff's wife "mirrors the claimant's function report and allegations." (Id. at 18.) Where, as here, the lay witness testimony mirrors the claimant's testimony, and the claimant is found to be not credible, the ALJ may reject the lay witness testimony for that reason alone. See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (holding that ALJ gave a germane reason for rejecting claimant's wife's testimony where it was similar to claimant's own complaints that were properly rejected).

### 3. Unsupported by the Medical Record.

The ALJ rejected Plaintiff's wife's assertions as not credible because they were not supported by any medically determined impairment. (AR at 18.) While lay testimony cannot be rejected merely because it is irrelevant to medical conclusions or not supported by medical evidence, Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009), inconsistency with medical evidence is a germane reason to discredit lay testimony. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005); Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence."); Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (per curiam) ("The ALJ properly discounted lay testimony that conflicted with the available medical evidence."). Because the ALJ here cites only a lack of support from the medical record, rather than an inconsistency, such lack of support is insufficient to discredit Plaintiff's wife's testimony.

/ / /

### 4. Bias.

The ALJ also referred to Plaintiff's wife's filial and pecuniary motivation to be helpful so Plaintiff could receive benefits. (AR at 18.) An ALJ may reject a lay witness' testimony if the ALJ finds the witness to be biased. See, e.g., Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (finding the ALJ's consideration of the claimant's prior girlfriend's close relationship with the plaintiff and desire to help him as a possible reason for bias was a reason germane to that witness). However, "[t]he fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony." Smolen, 80 F.3d at 1289; see also Valentine, 574 F.3d at 694 (finding that being an interested party in the abstract was insufficient to reject a spouse's testimony). Thus, the fact that Plaintiff's wife has a motivation as Plaintiff's wife to help him is not a sufficient reason germane to her for discrediting her testimony.

### 5. Competence of Testimony.

Furthermore, the ALJ rejected Plaintiff's wife's testimony because she is not competent to make a diagnosis or argue the severity of Plaintiff's symptoms in relationship to his ability to work. (AR at 18.) An ALJ need not discuss "medical diagnoses" made by lay witnesses because they "are beyond the competence of lay witnesses and therefore do not constitute competent evidence." Nguyen, 100 F.3d at 1467 (citing 20 C.F.R. § 404.1513(a)). "However, lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, and therefore cannot be disregarded without comment." Id. (citations omitted). Thus, the ALJ erred in finding Plaintiff's wife incompetent to testify regarding the effect of Plaintiff's symptoms on his ability to work.

### 6. Conclusion.

Nonetheless, because the ALJ provided significant reasons for rejecting

Plaintiff's wife's testimony that were germane to her, any error was harmless. See Carmickle, 533 F.3d at 1162-63 (finding an error by the ALJ with respect to one or more factors in a credibility determination may be harmless if there "remains substantial evidence supporting the ALJ's conclusions" in that regard).

Based on the foregoing, the Court finds that relief is not warranted on Plaintiff's claim.

## IV.
## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: June 26, 2012

HONORABLE OSWALD PARADA
United States Magistrate Judge